UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

BUC-EE'S, LTD.,

      Plaintiff,

v.

HANES ROAD CARRYOUT, INC.,

      Defendant.

CIVIL ACTION NO. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Buc-ee's, Ltd. ("Plaintiff" or "Buc-ee's"), appearing through its undersigned counsel, alleges as follows:

### NATURE OF ACTION AND JURISDICTION

1. This is an action for trademark infringement and unfair competition, under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*.

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. §§ 1331 and 1338.

3. This Court has personal jurisdiction over Defendant due to its residency and business activities in this judicial district.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) as Defendant resides in this judicial district.

### PARTIES

5. Plaintiff is a Texas limited partnership with a principal place of business at 327 FM 2004, Lake Jackson, Texas 77566.

6.      On information and belief, Defendant Hanes Road Carryout, Inc. is an Ohio corporation with a principal place of business at 1592 Hanes Road., Beavercreek, Ohio 45437.

## FACTS

### BUC-EE'S AND ITS TRADEMARKS

7.      Plaintiff owns and operates a chain of stores and travel centers under the name "Buc-ee's." For over four decades, Plaintiff has offered high quality convenience store, gas station, and related goods and services to the public through its Buc-ee's stores.

8.      In connection with these goods and services, in addition to the mark BUC-EE'S, Plaintiff has long and continuously used the distinctive logos shown below, which feature a cartoon beaver character as well as the mark BEAVER'S (collectively, the "Buc-ee's Marks").

  

9.      Plaintiff's stores are not like other convenience stores. They are "highway oases," as *Texas Monthly* put it in 2019. For legions of fans, Buc-ee's "has become the rare brand—like Apple and Costco—that inspires loyalty that goes well beyond rational consumer calculations." *See* **Exhibit A**. Over 10,000 customers visited Buc-ee's in New Braunfels on opening day in 2012. Consumers likewise began lining up at 6:00 a.m. when Plaintiff opened its Fort Worth store in 2016. Out-of-state visitors often remark: "I was told we couldn't go to Texas without stopping here."

10.     Plaintiff and the Buc-ee's Marks have become iconic brands. A segment about Buc-ee's that aired on CBS News' nationally syndicated Sunday Morning program begins: "We all know that feeling. You're out on the open road. Your gas tank is empty, and your bladder is full.

2

Well in Texas, a lot of folks in this predicament, look for [Plaintiff's] cartoon beaver." The segment goes on to compare the Buc-ee's logo's renown to Mickey Mouse, observing: "Perhaps not since Mickey Mouse has a cartoon rodent captured the hearts . . . of so many." *See* **Exhibit B**.

11.     The Buc-ee's Marks prominently appear on signs visible from the highway, above entrances to Buc-ee's stores, on top of the gas-pump canopies, on signage inside the stores, and on an array of Buc-ee's branded products and apparel sold in-store.

  

12. One of the predominant colors used at Plaintiff's stores is red, with employees wearing red uniforms, interior red signage, and the name BUC-EE'S appearing in giant red lettering outside the stores.  Among the BUC-EE'S-branded souvenir items are red shirts featuring the Buc-ee's Marks.

13.     Plaintiff has grown its business from a single convenience store in the Lake Jackson, Texas area to more than 50 stores across Ohio, Florida, Texas, Missouri, Alabama, Georgia, South Carolina, Tennessee, Kentucky, Mississippi, Virginia, Arizona, and Colorado. Additional stores are in the planning or construction phases in several more states, including Arkansas, Kansas, North Carolina, Wisconsin, Louisiana, Utah, and Idaho.

14.     A January 21, 2026, article announcing the upcoming opening of the first Ohio location near Dayton, Ohio informs readers:

Best known for its massive locations, extensive food and retail offerings, and quirky brand identity centered around a smiling beaver mascot, Buc-ee's is more than a typical gas station for many who treat it as a destination when on road trips.  It's sometimes referred to as the "Disneyland of convenience stores".

*See* **Exhibit C**.

15.     The April 6, 2026, opening of the Huber Heights, Ohio location reportedly broke records and caused nearby hotels to sell out. *See* **Exhibit D**.

16.     The Buc-ee's Marks are inherently distinctive and serve to identify and indicate the source of Plaintiff's products and services to the consuming public.

17.     The Buc-ee's Marks have become distinctive in the marketplace to designate Plaintiff, to distinguish Plaintiff and its offerings from those of others, and to distinguish the source or origin of Plaintiff's offerings. The consuming public in Texas and elsewhere in the United States widely recognizes and associates the Buc-ee's Marks with Plaintiff.

18.     As a result of Plaintiff's long use and promotion of the Buc-ee's Marks, Plaintiff has acquired valuable common law rights in the Marks.

19.     In accordance with the provisions of federal law, Plaintiff has registered the Buc-ee's Marks on the Principal Register of the United States Patent and Trademark Office in connection with a wide variety of goods and services, including retail store services featuring convenience store items and gasoline. *See* U.S. Reg. Nos. 6,059,078; 5,885,946; 4,316,461; 4,007,064; 7,419,559; 3,246,893; 4,973,185; 4,973,077; 8,113,899; and 8,113,900.

20.     Plaintiff's registrations are valid and subsisting, and all but U.S. Reg. Nos. 7,419,559; 8,113,899; and 8,113,900 are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of these registrations are attached as **Exhibit E**.

**DEFENDANT AND ITS UNLAWFUL ACTIVITIES**

21. On information and belief, Defendant owns and operates a retail store offering a range of convenience store items.

22. Defendant is the owner of the Ohio Trade Name Registration (Doc. No. 202529601158) for "BEAVERS MINI MART."

23. In addition, Defendant has used the trade name "Beaver's" and a cartoon beaver logo in connection with its convenience store operations hereinafter referred to as "Defendant's Marks"), an example of which is depicted below:



24. Like the Buc-ee's Marks, Defendant's Marks incorporate a cartoon beaver with wide eyes and a smile.

25. Defendant also uses red as a predominant color in its exterior signage with its anthropomorphic representation of a cartoon beaver mascot.

26. Upon information and belief, Defendant's use of Defendant's Marks began after Plaintiff developed rights in its Buc-ee's Marks.

27. Plaintiff has priority based on the Buc-ee's Registrations and the Buc-ee's Marks, some of which have been used in United States commerce for over four decades.

28.     Plaintiff has never authorized Defendant to use and/or register Defendant's Marks. Thus, Defendant has used and promoted Defendant's Marks in commerce without Plaintiff's authorization.

## EFFECTS OF DEFENDANT'S UNLAWFUL ACTIVITIES

29.     Defendant's unauthorized use of Defendant's Marks is likely to cause confusion among consumers. Consumers are likely to perceive a connection or association as to the source, sponsorship, or affiliation of the parties' products and services, when in fact none exists, given the similarity of the parties' logos, trade channels, and consumer bases.

30.     This likelihood of confusion is exacerbated by Defendant's collective use of the tradename "Beaver's," predominant use of the color red, as well as a cartoon beaver logo that also closely resembles Plaintiff's distinctive logos in style and subject matter.

31.     Defendant's unauthorized use of Defendant's Marks falsely designates the origin of its products and services and falsely represents circumstances with respect to Defendant and its products and services.

32.     Defendant's unauthorized use of Defendant's Marks enables Defendant to trade on the goodwill built up at great labor and expense by Plaintiff over many years, and to gain acceptance for its goods and services not solely on its own merits, but on the reputation and goodwill of Plaintiff, its Buc-ee's Marks, and its products and services.

33.     Defendant's unauthorized use of Defendant's Marks unjustly enriches Defendant at Plaintiff's expense. Defendant has been and continues to be unjustly enriched by obtaining a benefit from Plaintiff by taking undue advantage of Plaintiff and its goodwill. Specifically, Defendant has taken undue advantage of Plaintiff by trading on and profiting from the goodwill in the Buc-ee's Marks developed and owned by Plaintiff, resulting in Defendant wrongfully obtaining a monetary and reputational benefit for its own business.

34. Defendant's unauthorized use of Defendant's Marks removes from Plaintiff the ability to control the quality of products sold under the Buc-ee's Marks. This places the valuable reputation and goodwill of Plaintiff in the hands of Defendant, over whom Plaintiff has no control.

35. Unless these acts of Defendant are restrained by this Court, they will continue, and they will continue to cause irreparable injury to Plaintiff and to the public for which there is no adequate remedy at law.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

36. Plaintiff repeats the allegations above as if fully set forth herein.

37. The acts of Defendant complained of herein constitute infringement of Plaintiff's federally registered Buc-ee's Marks in violation of 15 U.S.C. § 1114(1).

38. On information and belief, Defendant's acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Plaintiff's rights in the Buc-ee's Marks and with intent to cause confusion and to trade on Plaintiff's vast goodwill in the Buc-ee's Marks. In view of the egregious nature of Defendant's infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II: FEDERAL UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

39. Plaintiff repeats the allegations as if fully set forth herein.

40. The Acts of Defendant complained of herein constitute trademark infringement, false designation of origin, false or misleading descriptions or representations of fact, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41.     Plaintiff has been damaged by Defendant's acts of trademark infringement, false designation of origin, false or misleading descriptions or representations of fact, and unfair competition.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands that:

(a)     Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be permanently enjoined and restrained from designing, displaying, advertising, offering for sale, manufacturing, shipping, delivering, selling, or promoting any product that incorporates or is marketed in conjunction with Defendant's Marks, the Buc-ee's Marks, and/or any other mark, name, or design confusingly similar to the Buc-ee's Marks, and from any attempt to retain any part of the goodwill misappropriated from Plaintiff;

(b)     Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all products, packaging, signage, advertisements, internet postings and advertisements, and any other materials bearing or using Defendant's Marks, Plaintiff's Buc-ee's Marks, and/or any other mark, name, or design that is confusingly similar to those marks, names, or designs;

(c)     Defendant be ordered to file with this Court and to serve upon Plaintiff, within thirty days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

(d)     Plaintiff recover all damages it has sustained as a result of Defendant's infringement, unfair competition, and deceptive trade practices, and that said damages be trebled;

8

e)      An accounting be directed to determine Defendant's profits resulting from Defendant's activities, and that such profits be paid over to Plaintiff;

g)      Plaintiff recover its reasonable attorneys' fees;

h)      Plaintiff recover its costs of this action and prejudgment and post-judgment interest; and

i)      Plaintiff recover such other relief as the Court may find appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues triable by jury under Federal Rule of Civil Procedure 38.

Respectfully submitted,

Dated: July 28, 2026

*/s/ Christina J. Moser*
Christina J. Moser (74817)
Melissa M. Bilancini (98510)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
(216) 621-0200
cmoser@bakerlaw.com
mbilancini@bakerlaw.com

*Attorneys for Plaintiff Buc-ee's, Ltd.*

9