UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| BUC-EE'S, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>HANES ROAD CARRYOUT, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:26-cv-00272-MJN-CHG<br><br>**JURY TRIAL DEMANDED** |

**SECOND AMENDED COMPLAINT**

Plaintiff Buc-ee's, Ltd. ("Plaintiff" or "Buc-ee's"), appearing through its undersigned counsel, alleges as follows:

**NATURE OF ACTION AND JURISDICTION**

1. This is an action for trademark infringement under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*.

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. §§ 1331 and 1338.

3. This Court has personal jurisdiction over Defendant due to its residency and business activities in this judicial district.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) as Defendant resides in this judicial district.

**PARTIES**

5. Plaintiff is a Texas limited partnership with a principal place of business at 327 FM 2004, Lake Jackson, Texas 77566.

6. Defendant Hanes Road Carryout, Inc. is an Ohio corporation with a principal place of business at 1592 Hanes Road, Beavercreek, Ohio 45437.

## FACTS

### BUC-EE'S AND ITS TRADEMARKS

7. Plaintiff's brand of stores and travel centers operate primarily under the name "Buc-ee's." For over four decades, Buc-ee's-branded stores have offered high-quality convenience store, gas station, and related goods and services to the public.

8. The brand has grown from a single convenience store in the Lake Jackson, Texas area to more than 50 stores across Ohio, Florida, Texas, Missouri, Alabama, Arkansas, Georgia, South Carolina, Tennessee, Kentucky, Mississippi, Virginia, Arizona, and Colorado. Additional stores are in the planning or construction phases in several more states, including Kansas, North Carolina, Wisconsin, Louisiana, Utah, and Idaho.

9. Buc-ee's-branded stores are not like other convenience stores. They are "highway oases," as *Texas Monthly* put it in 2019. For legions of fans, Buc-ee's "has become the rare brand—like Apple and Costco—that inspires loyalty that goes well beyond rational consumer calculations." *See* **Exhibit A**. Over 10,000 customers visited Buc-ee's in New Braunfels on opening day in 2012. Consumers likewise began lining up at 6:00 a.m. when Plaintiff opened its Fort Worth store in 2016. Out-of-state visitors often remark: "I was told we couldn't go to Texas without stopping here."

10. A January 21, 2026, article announcing the upcoming opening of the first Ohio location near Dayton, Ohio informs readers:

> Best known for its massive locations, extensive food and retail offerings, and quirky brand identity centered around a smiling beaver mascot, Buc-ee's is more than a typical gas

station for many who treat it as a destination when on road trips. It's sometimes referred to as the "Disneyland of convenience stores".

*See* **Exhibit B**.

11. The April 6, 2026, opening of the Huber Heights, Ohio location reportedly broke records and caused nearby hotels to sell out. *See* **Exhibit C**.

12. A segment about Buc-ee's that aired on CBS News' nationally syndicated Sunday Morning program begins: "We all know that feeling. You're out on the open road. Your gas tank is empty, and your bladder is full. Well in Texas, a lot of folks in this predicament, look for [Plaintiff's] cartoon beaver." The segment goes on to compare the Buc-ee's logo's renown to Mickey Mouse, observing: "Perhaps not since Mickey Mouse has a cartoon rodent captured the hearts . . . of so many." *See* **Exhibit D.**

13. Over the years, Buc-ee's has become synonymous with its beaver mascot. Buc-ee the Beaver prominently appears on signs visible from the highway, outside Buc-ee's-branded stores, on top of the gas-pump canopies, on signage inside the stores, and on an array of Buc-ee's-branded products and apparel sold in-store.







14. On April 5, 2017, Plaintiff applied for the mark BEAVER'S in International Class 035 in connection with "retail store services featuring convenience store items and gasoline," which registration issued May 19, 2020 as U.S. Reg. No. 6059078 ("the '078 Registration"), which

registration is active, in use, and incontestable. A true and correct copy of the '078 Registration is attached as **Exhibit E**.

15. Accordingly, Buc-ee's priority rights to the term BEAVER'S in connection with convenience store services ("Buc-ee's BEAVER'S Mark") dates back to at least as early as April 5, 2017.

16. Buc-ee's BEAVER'S Mark is inherently distinctive and serves to identify and indicate the source of Plaintiff's products and services to the consuming public.

17. Buc-ee's BEAVER'S Mark has become distinctive in the marketplace to designate Plaintiff, to distinguish Plaintiff and its offerings from those of others, and to distinguish the source or origin of Plaintiff's offerings. The consuming public in Texas and elsewhere in the United States widely recognizes and associates the Buc-ee's BEAVER'S Mark with Plaintiff.

## DEFENDANT AND ITS UNLAWFUL ACTIVITIES

18. On information and belief, Defendant currently operates a retail store offering a range of convenience store items.

19. On information and belief, Defendant formed on August 9, 2017.

20. On information and belief, Defendant's affiliate, Salem Ave Property, LLC, purchased the real property located at 1592 Hanes Road., Beavercreek, Ohio 45437 on October 4, 2017.

21. On information and belief, the prior operator of the convenience store located at 1592 Hanes Road operated under the service mark OPEN PANTRY MARKET until ceasing operations in the latter part of 2017.

22. On information and belief, the prior operator of the convenience store located at 1592 Hanes Road never used the name "Beaver's Mini Mart."

23. On information and belief, following transfer of the real property at 1592 Hanes Road to Defendant's affiliate, the convenience store was closed between October 2017 and around January 22, 2018, for renovation.

24. Upon information and belief, upon re-opening, Defendant operated the convenience store under the name "Hanes Road Carryout" and created a Facebook page as "Hanes Road Carry Out at Beavercreek," found at https://www.facebook.com/p/Hanes-road-carry-out-at-beavercreek-100066306591692/.

25. Upon information and belief, an application for an outdoor sign permit for 1592 Hanes Road was filed on April 26, 2019.

26. Upon information and belief, at some point between issuance of the permit on April 29, 2019, and July 2019, the below sign featuring an anthropomorphic cartoon beaver and the words "Beaver's Mini Mart" was installed:




27. Upon information and belief, until installation of the above sign between April and July 2019, neither Defendant nor any predecessor in interest operated the convenience store at 1592 Hanes Road as "Beaver's Mini Mart" or prominently used an anthropomorphic cartoon beaver as a store logo.

28. On October 23, 2025, Defendant filed an Ohio Trade Name Registration (Doc. No. 202529601158) for "BEAVERS MINI MART," claiming first use of the name on January 1, 2025.

29. Upon information and belief, no earlier than April 29, 2019, Defendant began using the service mark BEAVER'S MINI MART ("Defendant's Mark") in connection with convenience store services.

30. Upon information belief, Defendant has authorized and financially benefitted from use of the mark BEAVER'S MINI MART on or in connection with goods, including cookies and t-shirts.

31. Upon information and belief, Defendant's use of Defendant's Mark began after Plaintiff developed rights in Buc-ee's BEAVER'S Mark.

32. Plaintiff has nationwide priority as to Defendant based on the '078 Registration.

33. Upon information and belief, Defendant and its affiliates under common ownership operate multiple convenience stores and gas stations across Ohio.

34. Upon information and belief, Defendant was aware of Buc-ee's BEAVER'S Mark prior to adopting Defendant's Mark and, it adopted "Beaver's Mini Mart" to ride the coattails of Buc-ee's reputation and create a likelihood that consumers might be confused as to an association or affiliation between Buc-ee's and/or Buc-ee's-branded convenience stores and Defendant and/or its convenience store(s).

35. Plaintiff has never authorized Defendant to use Defendant's Mark. Thus, Defendant has used and promoted Defendant's Mark in commerce without Plaintiff's authorization.

**EFFECTS OF DEFENDANT'S UNLAWFUL ACTIVITIES**

36. On March 5, 2026, Buc-ee's wrote Defendant, asking it to cease and desist use of Defendant's Mark.

37. Defendant never responded to Buc-ee's March 5, 2026, letter.

38. On April 21, 2026, Buc-ee's wrote Defendant a second letter, asking it to cease and desist use of Defendant's Mark.

39. Defendant never responded to Buc-ee's April 21, 2026, letter.

40. On June 11, 2026, Buc-ee's hand delivered a new cease and desist letter to Defendant's store, asking for a response by June 18, 2026.

41. Defendant never responded to Buc-ee's June 18, 2026 letter.

42. On July 28, 2026, after four months of trying to elicit a response from Defendant, Buc-ee's filed this lawsuit.

43. On information and belief, following the filing of this lawsuit, Defendant claimed to the news media that it had never heard any objection from Buc-ee's prior to its filing the lawsuit.

44. On information and belief, Defendant claimed it had been using Defendant's Mark for a decade.

45. After being contacted by counsel for Defendant after the lawsuit was filed, Buc-ee's repeatedly asked for evidence showing Defendant's alleged use of Defendant's Mark prior to April 2019.

46. Defendant did not provide proof of use of Defendant's Mark prior to April 2019.

47. Defendant's unauthorized, unfettered, and uncontrolled use of Defendant's Mark is likely to cause confusion among consumers. Consumers are likely to perceive a connection or association as to the source, sponsorship, or affiliation of the parties' products and services, when in fact none exists, given the similarity of the parties' marks, relatedness of their goods and services, trade channels, and consumer bases.

48. Consumers learning of Defendant's "Beaver's Mini Mart" could presume that Defendant is a "mini" convenience store version of a Buc-ee's-branded store.

49. Defendant's unauthorized use of Defendant's Mark falsely designates the origin of its products and services and falsely represents affiliation, association, and/or sponsorship with respect to Plaintiff and its products and services.

50. Defendant's unauthorized use of Defendant's Mark enables Defendant to trade on the goodwill built up at great labor and expense by Plaintiff over many years, and to gain acceptance for its goods and services not solely on its own merits, but on the reputation and goodwill of Plaintiff, Buc-ee's BEAVER'S Mark, and its products and services.

51. Most importantly, Defendant's unauthorized use of Defendant's Mark removes from Plaintiff the ability to control the quality of products and services sold under Buc-ee's BEAVER'S Mark. This places the valuable reputation and goodwill of Plaintiff in the hands of Defendant, over whom Plaintiff has no control.

52. Unless these acts of Defendant are restrained by this Court, they will continue, and they will continue to cause irreparable injury to Plaintiff and to the public for which there is no adequate remedy at law.

**COUNT I: FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1114)**

53. Buc-ee's repeats the allegations above as if fully set forth herein.

54. The acts of Defendant complained of herein constitute infringement of Buc-ee's federally registered Buc-ee's BEAVER'S Mark in violation of 15 U.S.C. § 1114(1).

55. On information and belief, Defendant's acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Buc-ee's rights in Buc-ee's BEAVER'S Mark and with intent to cause confusion and to trade on Plaintiff's vast goodwill in Buc-ee's BEAVER'S Mark. In view of the egregious nature of Defendant's infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands that:

(a) Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be permanently enjoined and restrained from designing, displaying, advertising, offering for sale, manufacturing, shipping, delivering, selling, or promoting any product that incorporates or is marketed in conjunction with Defendant's Mark, Buc-ee's BEAVER'S Mark, and/or any other mark, name, or design equivalent or confusingly similar to Buc-ee's BEAVER'S Mark, and from any attempt to retain any part of the goodwill misappropriated from Plaintiff;

(b) Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all products, packaging, signage, advertisements, internet postings and advertisements, and any other materials bearing or using Defendant's Mark, Buc-ee's BEAVER'S Mark, and/or any other mark, name, or design that is equivalent or confusingly similar to those marks, names, or designs;

(c) Defendant be ordered to file with this Court and to serve upon Plaintiff, within thirty days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

(d) Plaintiff recover all damages it has sustained as a result of Defendant's infringement and that said damages be trebled;

e) An accounting be directed to determine Defendant's profits resulting from Defendant's activities, and that such profits be paid over to Plaintiff;

g) Plaintiff recover its reasonable attorneys' fees;

h) Plaintiff recover its costs of this action and prejudgment and post-judgment interest; and

i) Plaintiff recover such other relief as the Court may find appropriate.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues triable by jury under Federal Rule of Civil Procedure 38.

Respectfully submitted,

Dated: November 3, 2026

*/s/ Melissa M. Bilancini*
Christina J. Moser (74817)
Melissa M. Bilancini (98510)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
(216) 621-0200
cmoser@bakerlaw.com
mbilancini@bakerlaw.com

*Attorneys for Plaintiff Buc-ee's, Ltd.*