**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| BUC-EE'S, LTD., | : | CASE NO. 3:26-cv-00272-MJN-CHG |
| Plaintiff, | : | JUDGE MICHAEL J. NEWMAN<br>MAGISTRATE JUDGE CAROLINE H. GENTRY |
| v. | : | |
| HANES ROAD CARRYOUT, INC., | : | **DEFENDANT HANES ROAD CARRYOUT, INC.'S MOTION TO DISMISS PLAINTIFF BUC-EE'S, LTD.'S SECOND AMENDED COMPLAINT (DOC. NO. 7)** |
| Defendant. | : | |

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Hanes Road Carryout, Inc. ("Defendant" or "Hanes Road") moves to dismiss the Second Amended Complaint Plaintiff Buc-ee's, Ltd. ("Plaintiff" or "Buc-ee's") filed on November 3, 2026 (Doc. No. 7).

The Second Amended Complaint narrows matters to a single but still flawed infringement claim based on the registration for "BEAVER'S." Plaintiff's claim no longer relies directly on cartoon mascots but still fails to plausibly allege confusion concerning source, sponsorship, or affiliation. Buc-ee's media coverage — which it included with its pleading — shows that the Second Amended Complaint fails to pass Rule 12(b)(6)'s standard for stating a claim for relief because consumer confusion is not plausible here. Given Plaintiff's concessions about long-standing usage, Plaintiff pleads no facts — only conclusions — about willfulness, bad faith, and exceptional-case status.

A Memorandum in Support is attached.

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

By /s/ David P. Pierce

David P. Pierce (0061972) Trial Attorney
Daniel J. Gentry (0065283)
33 W. First Street, Suite 600
Dayton, Ohio 45402
Tel.: 937-223-8177; Fax: 937-223-8711
Email: pierce@coollaw.com
gentry@coollaw.com

*COUNSEL FOR DEFENDANT HANES ROAD CARRYOUT, INC.*

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION

A newly arrived commercial giant that brags about its advertising, reputation as the "Disneyland of convenience stores," and record-breaking opening day sales is attempting to prevent a tiny but well-established business from using the word "Beaver's" on a sign with a cartoon beaver in Beavercreek, Ohio. Plaintiff identifies no actual confusion, overlap in marketing methods, and no plausible facts (versus legal conclusions) for inferring intentional imitation. This Court should dismiss Plaintiff's Amended Complaint.

## II. STATEMENT OF FACTS

Buc-ee's filed this action on July 28, 2026, and asserted federal claims for trademark infringement and unfair competition. Complaint ("Compl.," Doc. No. 1), ¶¶ 14, 36–41. Its November 3, 2026 Second Amended Complaint ("Am. Compl.," Doc. No. 7) asserts a single claim based on a word mark: "BEAVER'S." Am. Compl., ¶¶ 14–15, 53–55. Plaintiff asserts that a local business operating a small convenience store named Beaver's Mini Mart using a cartoon-beaver sign (since at least 2019) infringes on Buc-ee's massive highway oases. Compl. ¶¶ 21–35; Am. Compl., ¶¶ 18-52.

Plaintiff operates stores and travel centers under the Buc-ee's name and uses several marks featuring a cartoon beaver. Compl. ¶¶ 7–8; Am. Compl, ¶ 7. Plaintiff's exhibits describe Buc-ee's locations as unusually large, highway-oriented, "destination" travel centers offering fuel, food, merchandise, and branded products. Compl. ¶¶ 9–15 & Exs. A–D. Am. Compl. ¶¶ 9–15 & Exs. A–D. Buc-ee's marks appear on highway signs, store entrances, gas-pump canopies, interior signage, products, and apparel. Compl. ¶¶ 11–12; Am. Compl. ¶13.

The original Complaint defined the Buc-ee's name, multiple beaver-head designs, and "BEAVER'S" as "Buc-ee's Marks." Compl. ¶¶ 8, 19–20 & Ex. E. Having had a chance to do a

little homework, Buc-ee's shifted its focus to a single word mark: "BEAVER'S." Am. Compl. ¶¶ 14-15. Plaintiff dropped the cartoon beaver registrations even though it still includes pictures and contentions relating to its mascot, "Buc-ee's has become synonymous with its beaver mascot." *Id.* ¶ 13. By eliminating cartoon character trademark registrations from the Second Amended Complaint, Buc-ee's silently concedes the obvious: its cartoon beavers ***do not*** look like the one on Hanes Road's sign. *Id.* ¶¶ 14–15, 54.[1]

The Second Amended Complaint incorporates the registration certificate for U.S. Reg. No. 6059078 (the "'078 Registration") as Exhibit E. Additional USPTO records for the '078 Registration are attached and incorporated as Exhibit 1.[2] Those records include Buc-ee's intent-to-use application, extension request, Statement of Use and original specimen, registration certificate, the October 2025 Combined Sections 8 and 15 declaration and later specimen, and the USPTO's acceptance and acknowledgment. While Buc-ee's cites its application date (April 5, 2017), it applied for registration based on its "intent to use" the mark (as opposed to actual use). Ex. 1. Buc-ee's did not claim to use the mark until December 17, 2019. *Id.*

Despite its reliance on a single word, Plaintiff asserts generalized allegations about marks' resemblance, similarity of services, and potential consumer associations. Am. Compl. ¶¶ 29, 34, 47–49, 54. Buc-ee's includes pictures and voluminous exhibits with photographs but did not depict the mark in use. Exhibit E is only the registration certificate. Buc-ee's provided specimens to the United States Patent and Trademark Office showing its true usage:

---

[1] Ohio's Governor, Mike DeWine, called the cartoon claims "ridiculous" and "absurd" and noted that consumers would not confuse the two cartoon beaver logos.

[2] Defendant separately requests that the Court take judicial notice of the existence, source, dates, and facial contents of these official USPTO records. *See* Def's Mot. for Judicial Notice, Ex. 1.




**Figure 1: Specimens Buc-ee's provided to United States Patent and Trademark Office for its '078 mark (2019 on the left and 2025 on the right).**

Exhibit 1, attached.

Despite Defendant's use of Beaver's Mini Mart since at least 2019 (a matter of public record that Buc-ee's acknowledges now), Plaintiff failed to allege a single inquiry, transaction, or communication involving a confused consumer. Am. Compl. ¶¶ 26, 29.[3] Nor has Plaintiff identified common advertising, shared promotional methods, or overlapping marketing channels where consumers encounter the marks. Instead, despite six plus years of Defendant's operation as Beaver's Mini Mart, Plaintiff speculates that consumers might associate Defendant's convenience store with Buc-ee's.

Like the original, the Second Amended Complaint describes wildly different marketplace presentations. Buc-ee's identifies its stores as destination travel centers that are distinct in the marketplace because of their scale, highway-oriented locations, extensive offerings, and prominent Buc-ee's branding. Compl. ¶¶ 9–15 & Exs. A–D; Am. Compl. ¶¶ 9–15 & Exs. A–D. Plaintiff's brand "inspires loyalty that goes well beyond rational consumer calculations." Am. Compl. ¶ 9.

---

[3] Public records provide some details about the Beaver's Mini Mart name and sign. The City of Beavercreek's permit record identifies a commercial-sign application for Beaver's Mini Mart at 1592 Hanes Road that was submitted on April 26, 2019, issued on April 29, 2019, and closed following a successful zoning inspection on October 18, 2019. City of Beavercreek Permit No. C-19-092, attached as Exhibit 2. Defendant separately requests that the Court take judicial notice of the existence, dates, and facial contents of this official record. *See* Def.'s Mot. for Judicial Notice, Ex. 2.

Buc-ee's first store was about 3,000 square feet; the second store was 6,000 square feet; many are over 50,000 square feet now. Am. Compl., Exhibit A. A store Buc-ee's opened in 2012, for example, "occupies 56,000 square feet and has aisles wide enough to drive a golf cart through," along with 96 gas pumps, 71 toilets and urinals, and 655 parking spaces. *Id*. Buc-ee's works to find or piece together 12–15-acre plots for store sites. *Id*. Its Huber Heights store has over 100 gas pumps and 700 parking spots. Am. Compl., Exhibits C and D.

Hanes Road offers humble convenience store items and lacks Buc-ee's self-styled grandiosity, not to mention gas pumps and other amenities. Compl. ¶ 21; Am. Compl., ¶ 18. Hanes Road's store is about 1,800 square feet on a small lot far from the highway.[4] By comparison, Buc-ee's alleges that its Huber Heights store encompasses approximately 74,000 square feet. Am. Compl. ¶ 11 & Ex. C. Hanes Road's entire store would fit within the interior of Buc-ee's Huber Heights store ***about 41 times***.

Despite Hanes Road's simplicity and long existence, Buc-ee's alleges, ***on information and belief***, that Hanes Road acted deliberately, willfully, intentionally, or in bad faith, with knowledge of Buc-ee's rights and an intent to cause confusion and trade upon Buc-ee's goodwill. Am. Compl. ¶ 55 (emphasis added).[5] Plaintiff does not allege when or how Hanes Road learned of Buc-ee's marks, a previous relationship with Buc-ee's, access to Buc-ee's branding, copying instructions, progressive alteration of Hanes Road's branding, or any communication reflecting imitation. Hanes Road would have to have been clairvoyant to have intentionally infringed on the trademark;

[4] The Greene County Auditor's property record identifies the building at 1592 Hanes Road as containing approximately 1,800 square feet. Greene County Auditor Property Record for Parcel No. B42-0005-0011-0-0112-00 (i.e., referred to by the Auditor as the 2025 Tax Card), attached as Exhibit 3. Defendant separately requests that the Court take judicial notice of the existence and facial contents of this official public record. *See* Def's Mot. for Judicial Notice, Ex. 3.

[5] Buc-ee's points to pre-suit communications that related to its former claim about cartoonish similarity. Am. Compl., ¶¶ 34, 36–46. Such claims never made any sense to Hanes Road and even Buc-ee's moved away from that theory. We live in an era, moreover, where we are bombarded with deceptive communications.

reasonable inferences from the pleaded facts do not establish intent. Even so, Buc-ee's labels Hanes Road's conduct as willful and in bad faith, characterizes the matter as exceptional, and seeks attorneys' fees and enhanced monetary relief. *Id.* ¶ 55 and Prayer for Relief. Buc-ee's allegations about intent and willfulness are implausible given that Hanes Road undeniably began using the name and sign before Buc-ee's (and years before Buc-ee's came to Ohio).

## III. LAW AND ARGUMENT

### A. Standard of Review

To survive Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court accepts well-pleaded facts and draws reasonable inferences for the plaintiff, but it need not accept legal conclusions, unwarranted inferences, or formulaic recitations of a claim's elements. *Iqbal*, 556 U.S. at 678-79; *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). When an incorporated exhibit contradicts a general allegation, the exhibit controls. *See Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

The Court may consider the complaint, its exhibits, public records, and documents referred to in the complaint and central to the claims without converting the motion into one for summary judgment. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (quoting *Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021)); Fed. R. Civ. P. 10(c).

The Court may also take judicial notice of the existence, dates, and contents of authentic government records, but may not accept reasonably disputed factual assertions within them as true merely because they appear in a public filing. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005); *see also Long-Lok, LLC v. Safety Socket, LLC*, No. 1:25-cv-346, 2026 U.S. Dist. LEXIS 188728, at *10 (S.D. Ohio Aug. 21, 2026) (taking judicial notice of the existence and

contents of USPTO and TTAB records but declining to use those records to resolve disputed trademark facts at the pleading stage). *See also, Abu-Joudeh v. Schneider*, 954 F.3d 842, 848–49 (6th Cir. 2020).

Buc-ee's must allege three elements to state a registered-mark infringement claim under 15 U.S.C. § 1114: ownership of a registered mark, Hanes Road's use of the mark in commerce, and a likelihood of confusion resulting from that use. *Bliss Collection, LLC v. Latham Cos., LLC*, 82 F.4th 499, 506 (6th Cir. 2023) (citing 15 U.S.C. § 1114(1)); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

The Sixth Circuit evaluates likelihood of confusion through eight factors: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) likely degree of purchaser care; (7) defendant's intent; and (8) likelihood of expansion. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).

**B. The Second Amended Complaint Does Not Plausibly Allege Likely Confusion.**

The *Frisch* factors guide the ultimate question—whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated. *Homeowners Grp., Inc. v. Home Mktg. Specialists*, 931 F.2d 1100, 1107 (6th Cir. 1991). The Second Amended Complaint must plausibly allege that Hanes Road's usage is likely to cause confusion concerning source, sponsorship, or affiliation by doing business as Beaver's Mini Mart. It does not cross that threshold. The parties' complete marks and marketplace presentations create materially different commercial impressions, and the remaining *Frisch* factors do not plausibly support confusion.

1. The parties' marks create different overall commercial impressions.

Marks must be compared in their entireties and as consumers encounter them, not dissected into isolated components or compared side by side. *Daddy's Junky Music Stores, Inc. v. Big*

*Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997) (quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988) (*Wynn I*)) (explaining that consumers may retain only a "general, vague, or even hazy" recollection of the other mark). Rather, "the relevant inquiry is whether a particular trademark, when viewed alone, would lead to uncertainty about the goods or services that it identifies." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 633 (6th Cir. 2002) (citing *Daddy's Junky Music Stores*, 109 F.3d at 283).

The inquiry considers appearance, pronunciation, and meaning, while focusing on the marks' overall commercial impressions. *Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1118–19 (6th Cir. 1996) (quoting *Wynn I*, 839 F.2d at 1188). While Buc-ee's registration for "BEAVER'S" is not limited to a particular font, style, size, color, or design, the likelihood-of-confusion inquiry still compares it with Hanes Road's complete accused designation, Beaver's Mini Mart, in the context in which consumers encounter it.

The Second Amended Complaint fails to adequately account for the parties' complete marks. Although Plaintiff has narrowed its infringement claim to the "BEAVER'S" word mark, it still emphasizes Buc-ee's beaver mascot and associated branding. Am. Compl. ¶¶ 13–15. Defendant's actual signage, however, presents Beaver's Mini Mart next to a full-body cartoon beaver and it does not use Buc-ee's name, capped beaver head, or other visuals associated with Plaintiff's branding:




**Figure 2: Hanes Road's Beaver's Mini Mart Sign**

*See,* Am. Compl.*,* ¶ 26.

Defendant's signage uses different artwork, composition, and framing and does not contain Buc-ee's yellow-circle outline. Although Beaver's Mini Mart incorporates the asserted "BEAVER'S" word mark, the sign also includes Mini Mart and the store's Beavercreek address. These features, considered together rather than in isolation, affect the designation's appearance, sound, and overall commercial impression.

The fact that Hanes Road uses this mark in Beavercreek, Ohio, moreover, also cannot be overlooked. For a business located in Beavercreek, Ohio, "Beaver's" is a short form reference to Beavercreek. At least in Beavercreek, Ohio, "Beaver's" is geographically descriptive rather than identifying a single source of goods and services. [6]

The Sixth Circuit requires marks to be evaluated in their entireties, including whether additional wording changes their appearance, sound, meaning, and overall commercial impression. *Kibler v. Hall*, 843 F.3d 1068, 1077–78 (6th Cir. 2016). Applying that rule, *Kibler* held that DJ LOGIC was dissimilar to LOGIC because the additional term materially changed the mark as a whole. *Id.* Although the Sixth Circuit has sometimes given greater weight to a shared dominant term and discounted descriptive additions, *see CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 592 (6th Cir. 2015); *AWGI, LLC v. Atlas Trucking Co.*, 998 F.3d 258, 266–67 (6th Cir. 2021), those decisions do not displace the required whole-mark analysis.

Here, consumers encounter Beaver's Mini Mart as a complete designation, not "BEAVER'S" standing alone. The Court must therefore consider whether the additional wording, together with the context in which consumers encounter the designation, changes its overall commercial impression. *See Kibler*, 843 F.3d at 1077–78; *Little Caesar Enters., Inc. v. Pizza*

---

[6] Even the Beavercreek City Schools mascot is named Bucky the Beaver.

*Caesar, Inc.*, 834 F.2d 568, 571–72 (6th Cir. 1987) (holding that the commonly used term "Caesar" did not make LITTLE CAESARS and PIZZA CAESAR USA confusingly similar when the marks differed in sound, appearance, and commercial impression); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 516–17 (6th Cir. 2007) (finding marks dissimilar where their commonality began and ended with a shared geographic term). Thus, although Plaintiff's "BEAVER'S" word mark appears within Defendant's Beaver's Mini Mart designation, that shared wording does not, standing alone, establish that the marks convey a confusingly similar overall commercial impression.

2. <u>The remaining *Frisch* factors do not cure the absence of plausible similarity.</u>

The remaining *Frisch* factors do not transform the material difference in the Parties' Marks into a plausible source of consumer confusion. Some factors may favor Buc-ee's at the pleading stage, but others are neutral or unsupported by factual allegations. Considered together, they do not plausibly establish that consumers encountering Beaver's Mini Mart would believe that Hanes Road is affiliated with, sponsored by, or approved by Buc-ee's.

*a. Strength and Relatedness*

The Second Amended Complaint separately alleges that "BEAVER'S" is distinctive and recognized, Am. Compl. ¶¶ 16–17, but its detailed allegations concern Buc-ee's, Buc-ee's stores, and the beaver mascot. *Id.* ¶¶ 7–15. Those broader allegations do not, without more, establish the commercial strength of "BEAVER'S" standing alone or eliminate Buc-ee's obligation to plead confusing similarity. *See Progressive Distrib. Servs., Inc. v. UPS, Inc.*, 856 F.3d 416, 428–30 (6th Cir. 2017) (incontestability does not establish commercial strength).

If relatedness arguably supports Buc-ee's because both parties offer convenience-store services, Buc-ee's undermined that consideration. Direct competition supports confusion only when the marks are sufficiently similar; relatedness cannot by itself overcome materially different

overall commercial impressions. *See Therma-Scan,* 295 F.3d at 632; *Leelanau Wine Cellars*, 502 F.3d at 516 (no likely confusion even though the parties produced the same product in the same region because their marks were insufficiently similar). Buc-ee's Second Amended Complaint and attached exhibits do not describe a mere convenience store. Buc-ee's distinguishes its large, highway-oriented destination travel centers from ordinary convenience stores and describes itself as "more than a typical gas station." Am. Compl. ¶¶ 9–15. Hanes Road and Buc-ee's are no more related for trademark purposes than a paper airplane and a jumbo jet.

*b. Actual Confusion and Marketing Channels*

The Second Amended Complaint identifies no customer, communication, transaction, or inquiry reflecting mistaken affiliation. Although actual confusion is not mandatory at the pleading stage, its absence is conspicuous given Hanes Road's long operation, Buc-ee's obvious resources, and Buc-ee's motivation to identify examples. *See Daddy's Junky Music Stores*, 109 F.3d at 284 (quoting *Wynn I*, 839 F.2d at 1188); *Therma-Scan*, 295 F.3d at 633–36 (finding limited evidence of confusion weak when measured against the scale and duration of the parties' concurrent operations); Am. Compl., Exhibit B.

The Second Amended Complaint likewise alleges only that the parties share "trade channels" and "consumer bases." Am. Compl. ¶ 47. The marketing-channel inquiry examines the parties' predominant customers and actual marketing methods, not merely whether they participate in the same broad industry. *Therma-Scan*, 295 F.3d at 636-37; *Leelanau Wine Cellars*, 502 F.3d at 519. Despite touting its success and including exhibits broadly describing its approach to growth and marketing, Buc-ee's identifies no common advertising media, no shared highway-sign strategy, no overlapping direct marketing, no common search terms, and no other facts showing how consumers encounter the marks through comparable channels.

To the contrary, Buc-ee's allegations and exhibits highlight materially different marketplace presentations. Buc-ee's differentiates itself from Hanes Road's marketplace presentation by saying that its travel centers "are not like other convenience stores." Am. Compl., ¶¶ 7-9. Buc-ee's emphasizes that it "is more than a typical gas station." *Id.* ¶ 10. Buc-ee's consistently describes itself as a destination travel center distinguished by its unusual (Texas-sized) scale, highway-oriented locations, extensive offerings, and prominent Buc-ee's branding. *Id.* ¶¶ 9–15 & Exs. A–D.

The Second Amended Complaint alleges that Hanes Road operates a convenience store. Am. Compl., ¶ 18. It does not and cannot identify Hanes Road highway signs, branded food items, gas pumps, or merchandise. Buc-ee's alleges, upon information and belief, "Defendant has authorized and financially benefitted from use of the mark Beaver's Mini Mart on or in connection with goods, including cookies and t-shirts." Am. Compl., ¶ 30.[7] Paragraph 30 is an attempt to create inferences based on naked speculation (Buc-ee's information and belief). If Defendant created merchandise, Plaintiff would be able to say so, but it cannot.

Buc-ee's provides no allegations about its use of "BEAVER'S" and no examples in the Second Amended Complaint. The specimens from Buc-ee's trademark filings show only window signs that a customer could only see after arriving at a Buc-ee's location. The allegation that consumers could perceive Beaver's Mini Mart as a "mini" Buc-ee's suggests an affiliation inference but supplies no facts explaining why consumers would draw that conclusion. *Id.* ¶¶ 47–49. Buc-ee's does not claim to do business as "mini mart" whether with "Buc-ee's" or with "BEAVER'S."

---

[7] The local community has been very supportive of Hanes Road.

As is clear from the Second Amended Complaint and its exhibits, nothing about Buc-ee's is "mini." A naked contention that Beaver's Mini Mart is similar or confusing is simply implausible. One would need to use the Buc-ee's name or arguably the Buc-ee's beaver mascot to evoke a "mini" Buc-ee's.

Buc-ee's extensively highlighted its massive differences with Hanes Road. Plaintiff's generalized assertions concerning the parties' marks, services, trade channels, and consumer bases therefore do not plausibly establish (or reasonably imply) that consumers would perceive the parties' stores as sharing a common source, sponsorship, or affiliation.

*c. Purchaser Care*

Buc-ee's may argue that the relatively low cost of convenience-store goods reduces the degree of consumer care. *See Frisch's Rests.*, 670 F.2d at 648. But that consideration should receive limited weight and makes little sense. The alleged confusion concerns a retail ***destination*** (i.e., Buc-ee's massive store), not an inexpensive ***purchase*** (i.e., the things customers buy after entering). Moreover, Buc-ee's thoroughly described consumers who affirmatively seek out its locations, treat Buc-ee's as a road-trip destination, line up for store openings, and exhibit brand loyalty "well beyond rational consumer calculations." Am. Compl. ¶¶ 9–11. We must take Buc-ee's at its word: its consumers are ***extraordinarily*** attentive to whether a particular store is, in fact, a Buc-ee's location or affiliated with the Buc-ee's brand.

Buc-ee's consumer behavior distinguishes the circumstances here from *D & J Master Clean, Inc. v. ServiceMaster Co.*, 181 F. Supp. 2d 821, 830 (S.D. Ohio 2002), where the court found relatively little purchaser care in part because the evidence indicated that carpet-cleaning customers did not display significant brand loyalty. Buc-ee's described the opposite: consumers deliberately seek out and demonstrate extreme loyalty to its brand. The low cost of the goods sold

might have provided some support for Buc-ee's but Buc-ee's completely undermined the weight of that consideration with other facts about its absolute distinctiveness.

The suggestion that customers would confuse Beaver's Mini Mart with Buc-ee's comes with implausible conclusions: based on that confusion, customers would have sought out Beaver's Mini Mart, planned road trips to visit, and waited in line to get in. Then, having had the experience of being confused, the customers would have notified Buc-ee's. None of that happened because the allegations (actually, legal conclusions) upon which Buc-ee's relies are implausible. At most, the purchaser-care factor provides modest support for Buc-ee's and does not make the alleged affiliation between Beaver's Mini Mart and Buc-ee's plausible.

*d. Intent and Expansion*

The Second Amended Complaint alleges, on information and belief, that Hanes Road acted deliberately and with the intent to trade on Buc-ee's goodwill. Am. Compl. ¶ 55. Buc-ee's suggests a nefarious relationship with other convenience stores "across Ohio," claims Defendant adopted Beaver's Mini Mart to ride Buc-ee's coattails and wants to trade on Buc-ee's goodwill "built up at great labor and expense." *Id.*, ¶¶ 33-34, 50.

First, Hanes Road is the only location Buc-ee's identifies and the only place where anything happened. Second, because Buc-ee's did not claim to use "BEAVER'S" in commerce until December 17, 2019, it was ***impossible*** for Hanes Road to "ride coattails" and "trade on goodwill" involving that mark by creating a sign between April and October of 2019. Hanes Road used the mark ***before*** Buc-ee's (Buc-ee's could not have built up goodwill in a mark before using it). Third, Hanes Road's actions predated Buc-ee's announced plans to open in Ohio by several years.

Although Plaintiff alleges prior knowledge and describes cease-and-desist correspondence, it identifies no specific facts demonstrating that Defendant adopted Beaver's Mini Mart with the

intent to imitate Plaintiff's mark. It does not allege access to Buc-ee's branding materials, copying instructions, a former relationship, or progressive modification of Hanes Road's branding toward Buc-ee's presentation. Compare *Bliss*, 82 F.4th at 513–14 (finding intent plausibly alleged through a former insider's progressive alteration of branding toward the plaintiff's presentation). Nor does the existence of Buc-ee's registrations itself establish intentional copying. *Daddy's Junky Music Stores*, 109 F.3d at 286–87; *Therma-Scan*, 295 F.3d at 638–39. Without facts showing deliberate imitation or an effort to benefit from Buc-ee's reputation, intent is neutral and provides no support for Buc-ee's confusion theory.

*e. Collectively, the* Frisch *factors do not plausibly establish confusion.*

The remaining factors are neutral or unsupported by factual allegations. Actual confusion, intent, and expansion are neutral, and the alleged overlap in marketing channels is conclusory. Most importantly, the allegations do not plausibly explain why consumers encountering Beaver's Mini Mart would infer affiliation with Buc-ee's. The "mini Buc-ee's" allegation states that ultimate inference rather than facts making it plausible. Am. Compl. ¶¶ 47–49. The *Frisch* factors, viewed as a whole, therefore do not plausibly establish that consumers would believe Beaver's Mini Mart is Buc-ee's or operates with Buc-ee's sponsorship, approval, or affiliation.

3. *Bliss* does not preclude dismissal under *Hensley*.

In *Bliss*, the Sixth Circuit reversed a 12(b)(6) dismissal. *Bliss,* 82 F.4th at 508. The plaintiff stated a claim for relief by alleging that a direct competitor founded by a former insider progressively modified its branding to look more like the plaintiff's (similar stylized lettering, substantially similar logo arrangement, signature light-blue color) when the companies had overlapping customers and marketing channels. *Bliss,* 82 F.4th at 504-12.

Unlike *Bliss*, the Second Amended Complaint alleges no former relationship, insider knowledge, progressive copying, actual-confusion event, or factual marketing overlap. Its

affiliation theory relies instead on related services, the shared word "BEAVER'S," and the conclusory assertion that consumers may perceive Hanes Road as a smaller Buc-ee's. *Hensley* confirms that dismissal remains appropriate when the complaint and incorporated materials do not plausibly suggest source or affiliation confusion, and speculation that supporting facts may later emerge cannot substitute for pleaded facts. *Hensley,* 579 F.3d at 610 –13.

Shared wording does not make confusion automatic or displace whole-mark analysis. The Second Amended Complaint must still plead facts making it plausible that consumers encountering Beaver's Mini Mart would perceive Hanes Road as sponsored by, affiliated with, or otherwise connected to Buc-ee's. It does not. Plaintiff pleads the conclusion that consumers may perceive Hanes Road as a "mini" Buc-ee's but pleads no facts bridging the gap between shared wording and likely affiliation confusion. This case therefore falls within *Hensley*, not *Bliss*, and the Second Amended Complaint should be dismissed.

**C. The Second Amended Complaint Does Not Support Willfulness, Bad Faith, or Exceptional-Case Treatment.**

Paragraph 55 alleges, on information and belief, that Hanes Road acted "deliberate[ly], willful[ly], intentional[ly], or in bad faith," with "full knowledge and conscious disregard" of Buc-ee's rights and an intent to cause confusion and trade upon Buc-ee's goodwill. Am. Compl. ¶ 55. Those are conclusions, not supporting facts. Although Rule 9(b) permits intent and knowledge to be alleged generally, the Second Amended Complaint must still contain sufficient factual matter to make the asserted mental state plausible. *Iqbal*, 556 U.S. at 686–87.

Although the Second Amended Complaint alleges facts bearing on notice (Am. Compl. ¶¶ 34, 36–46), notice is not the same as an intent to confuse. It does not allege when or how Hanes Road learned of Buc-ee's marks before selecting Beaver's Mini Mart, who allegedly possessed that knowledge, whether Hanes Road had access to Buc-ee's branding materials, whether anyone

instructed a designer to imitate Buc-ee's, or whether Hanes Road altered its branding after learning of Buc-ee's plans to enter Ohio. Nor does it identify any communication, redesign, or other conduct suggesting that Hanes Road selected its branding to appropriate Buc-ee's goodwill. The allegations therefore do not plausibly show that Hanes Road originally selected its designation to appropriate Buc-ee's goodwill.

Those omissions distinguish this case from *Bliss*. There, the Sixth Circuit found intent plausibly alleged based on a former insider's relationship with the plaintiff and allegations that the defendant progressively modified its logo, color, and overall presentation toward the plaintiff's branding. 82 F.4th at 513–14. Buc-ee's alleges no comparable former relationship, insider access, progressive redesign, or copying-related communication here.

Nor does Buc-ee's ownership of prior trademark rights fill the factual gap. Intent may support likely confusion when a defendant selects a mark to derive a benefit from the senior user's reputation, but knowledge of another mark, without more, does not necessarily establish an intent to confuse. *Daddy's Junky Music Stores,* 109 F.3d at 286–87. Buc-ee's has not pleaded facts making the factor favor Buc-ee's. At most, the intent factor is neutral and supplies no support for Buc-ee's likelihood-of-confusion theory.

The same deficiency undermines Buc-ee's assertion that this is an "exceptional case" warranting attorneys' fees under § 1117(a).[8] Compl. ¶ 38 and Prayer for Relief; Am. Compl. ¶ 55 & Prayer for Relief. An exceptional case is one that "stands out from others" based on the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated. *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 75 F.4th

[8] Hanes Road does not contend that willfulness is a categorical prerequisite to an award of profits under § 1117(a). *See Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215–19 (2020). This argument addresses only Buc-ee's unsupported willfulness, bad-faith, and exceptional-case allegations.

607, 613–15 (6th Cir. 2023) (applying the *Octane Fitness* totality-of-the-circumstances standard to Lanham Act fee requests); *Bliss*, 82 F.4th at 516. The inquiry is flexible and considers the totality of the circumstances. Willfulness may be relevant, but intentional infringement does not automatically make a case exceptional. The *La Bamba* decision explains that the district court must decide whether the case has the rare qualities distinguishing it from a typical trademark dispute. 75 F.4th at 614–15.[9]

The allegations likewise do not make exceptional-case treatment plausible. The Second Amended Complaint alleges no violation of an existing injunction, continued infringement following an adjudication, concealment, knowingly false claim of authorization, or comparable culpable conduct. *See La Bamba*, 75 F.4th at 609–15; *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 500–01, 505–06 (6th Cir. 2013); *Audi AG v. D'Amato*, 469 F.3d 534, 539–41, 550–51 (6th Cir. 2006). Instead, paragraph 55 merely labels the alleged conduct "egregious," "willful," and undertaken in "bad faith."

Accordingly, if the infringement claim survives, the Court should disregard Buc-ee's unsupported allegations of willfulness and bad faith in evaluating the *Frisch* intent factor and hold that those allegations do not presently establish exceptional-case status under § 1117(a).

## IV. CONCLUSION

Trademark law protects against likely consumer confusion, not shared wording in the abstract. It does not empower a commercial giant to monopolize every business name containing "BEAVER'S." The Second Amended Complaint alleges shared wording and asserts that

[9] In assessing the totality of the circumstances, a court may consider a nonexclusive range of factors, including "frivolousness, motivation, objective unreasonableness" in the factual and legal components of the case, and the need to advance considerations of compensation and deterrence. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 & n.6 (2014). No single consideration controls, and independently sanctionable conduct is not required. *Id.* at 553–55.

consumers ***may*** perceive Hanes Road as a "mini" Buc-ee's, but it does not plead ***facts*** making that inference plausible. The facts, including the attached exhibits, show that the confusion claim is not plausible. *Hensley* therefore controls and this Court should dismiss the Second Amended Complaint.

For the foregoing reasons, this Court should dismiss the Second Amended Complaint pursuant to Rule 12(b)(6). If the Court does not dismiss it, the Court should disregard the unsupported allegations of willfulness and bad faith and hold that those allegations do not presently establish exceptional-case status under 15 U.S.C. § 1117(a).

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

By */s/ David P. Pierce*

David P. Pierce (0061972) Trial Attorney
Daniel J. Gentry (0065283)
33 W. First Street, Suite 600
Dayton, Ohio 45402
Tel.: 937-223-8177; Fax: 937-223-8711
Email: pierce@coollaw.com
gentry@coollaw.com
*COUNSEL FOR DEFENDANT HANES ROAD CARRYOUT, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's ECF System and copies will be mailed via email or U.S. Mail to those parties to whom electronic notice has not been sent. Parties may access the filing through the Court's system.

By */s/ David P. Pierce*
David P. Pierce

4897-1909-7308, v. 6